UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BARON MONTERO JONES, | Civil No. 11-386 (JNE/AJB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| STEPHEN C. REDDING, RACHELLE DRAKEFORD, GREGORY MULLIGAN, CHERYL A. SEEMAN, JOSEF GARCIA, MARILYN JUSTMAN KAMAN, GORDON W. SHUMAKER, EDWARD TOUSSAINT, JR., GARY L. CRIPPEN, ALAN C. PAGE, RAYMOND L. ERICKSON, JAMES ROSENBAUM, STEVEN COLLOTON, RAYMOND W. GRUENDER, BOBBY SHEPARD, ROGER M. KLAPHAKA, DAVID MINGE, WRIGHT, STATE OF MINNESOTA, and UNITED STATES, | |
| Defendants. | |

Plaintiff, a former state prison inmate,[1] commenced this action by filing a self-styled civil complaint seeking relief for alleged violations of his rights under federal law and the Constitution.  (Docket No. 1.)  The case has been referred to this Court for initial screening pursuant to 28 U.S.C. § 1915A and 1915(e)(2)(B), and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[2]  For the reasons discussed below,

---

[1]  Plaintiff was incarcerated when he filed this action, but a website maintained by the Minnesota Department of Corrections shows that he was released from prison on or about May 26, 2011.

[2]  Plaintiff did not tender the statutory filing fee with his complaint, but instead applied for leave to proceed in forma pauperis, ("IFP").  Plaintiff has paid the initial partial filing fee required by 28 U.S.C. § 1915(b)(1), so the matter is presently ripe for initial screening.

the Court finds that all of the claims presented in Plaintiff's complaint must be dismissed.

## I. BACKGROUND

In October 2003, Plaintiff encountered a woman at a party.  The woman became very intoxicated, and some of her friends took her into a bedroom.  The friends later became concerned about the woman's welfare, and a private security guard was summoned to the bedroom where the woman had been taken.  The guard opened the bedroom door, and Plaintiff was found to be in bed with the woman.  The woman was motionless, and appeared to be passed out.

Plaintiff was removed from the bedroom and taken to a nearby hallway, where he was detained by Defendant Josef Garcia, a private security guard.  Garcia interviewed Plaintiff about what had happened in the bedroom.  Unbeknownst to Plaintiff, the interview was recorded by Garcia.

A few hours later, Plaintiff was interviewed by a police officer.  During that interview, Plaintiff admitted that he had sexual contact with the woman in the bedroom, but he stated that the woman was awake when that occurred.  Plaintiff was later charged with multiple counts of criminal sexual conduct and burglary.

Shortly before Plaintiff went to trial, he learned about the statement that Garcia had recorded.  Plaintiff filed a motion seeking to suppress his statement to Garcia, because Garcia had not read him his "Miranda rights."  The state trial court judge denied Plaintiff's suppression motion, and Plaintiff's statement to Garcia was subsequently admitted as evidence at Plaintiff's criminal trial.  The jury found Plaintiff guilty of third degree criminal sexual conduct and first degree burglary, and he was sentenced to 72 months in prison.  Plaintiff was still serving that sentence when he filed his present lawsuit.

After Plaintiff was convicted and sentenced, he filed a direct appeal, contending that his conviction should be overturned, because the trial court judge had erroneously failed to suppress the statement that was recorded by Garcia.  That argument was rejected, however, because the Minnesota Court of Appeals determined that Garcia was acting as a private citizen, not a public law enforcement official, when he recorded Plaintiff's statement.  Plaintiff raised several other challenges to his conviction, but all of his claims were rejected, and his conviction and sentence were affirmed.  The Minnesota Supreme Court subsequently denied Plaintiff's application for further review.  State v. Jones, No. A04-841 (Minn.App. 2005), 2005 WL 1088525 (unpublished opinion), rev. denied, July 19, 2005.[3]

In October 2005, Plaintiff filed a habeas corpus petition pursuant to 28 U.S.C. § 2254.  The petition was filed in this District, and the matter was assigned to former Chief District Court Judge James M. Rosenbaum and former Chief Magistrate Judge Raymond L. Erickson.  Jones v. Adair, Civil No. 05-2427 (JMR/RLE).  In Plaintiff's habeas case, he again contended that he had been convicted in violation of his federal constitutional rights, because the state trial court judge wrongly refused to suppress his statement to Garcia. Magistrate Judge Erickson found that Plaintiff's habeas corpus claims were not meritorious, and he recommended that Plaintiff's habeas corpus petition should be dismissed with prejudice.  (Id., Report and Recommendation dated August 29, 2006, [Docket No. 13].) Plaintiff filed objections to the Magistrate Judge's recommendation, but District Judge Rosenbaum overruled those objections, adopted the recommendation, and ordered that

---

[3]  All of the background information recited thus far is provided by the Minnesota Court of Appeals' opinion in Plaintiff's direct appeal.

Plaintiff's habeas corpus petition be dismissed with prejudice.  (Id., Order dated October 31, 2006, [Docket No. 15].)

Plaintiff tried to appeal the ruling on his federal habeas corpus petition, but Judge Rosenbaum declined to grant him a Certificate of Appealability, ("COA").  (Id., Order dated February 1, 2007, [Docket No. 19].)  The Eighth Circuit Court of Appeals also declined to grant Plaintiff a COA, and his appeal was therefore summarily dismissed.  (Id., "Judgment" dated June 13, 2007, [Docket No. 23].)

After Plaintiff's federal habeas corpus case was closed, he filed a post-conviction motion in the state trial court.  In that proceeding, Plaintiff contended that his state criminal conviction and sentence should be vacated on the grounds of faulty jury instructions, judicial bias, ineffective assistance of counsel, and prosecutorial misconduct.   The prosecutorial misconduct claim was based on the prosecutor's alleged failure to make a timely disclosure of the statement that was recorded by Garcia.  Plaintiff's post-conviction motion was denied by the trial court judge, and that ruling was later affirmed by the Minnesota Court of Appeals.  Jones v. State, No. A07-799 (Minn.App. 2008), 2008 WL 2104870 (unpublished opinion).

A few years later, Plaintiff commenced the present civil action by filing a 23-page handwritten complaint.  He is now attempting to sue twenty parties who allegedly were involved in the state criminal case described above.  Plaintiff claims that the twenty named Defendants in this action violated his legal rights under federal law and the Constitution.  He is seeking a judgment against Defendants in the amount of $62,793,548.97, as well as some unspecified "injunctive relief."

The named Defendants in this action, and their respective connections to Plaintiff's prior state criminal case, are as follows:

Defendant Josef Garcia is the private security guard who recorded Plaintiff's statement immediately after the events that precipitated Plaintiff's criminal conviction. Plaintiff alleges that Garcia violated federal law and the Constitution, by recording his statement without his knowledge, and without giving him a "Miranda warning."

Defendants Stephen Redding and Rachelle Drakeford are identified as assistant Hennepin County attorneys who were involved in the prosecution of Plaintiff's state criminal case.  Plaintiff claims that Defendants Redding and Drakeford violated his rights under federal law and the Constitution, because they allegedly failed to disclose the recording of his statement to Garcia until the eve of the trial.  According to Plaintiff's complaint, Defendant Redding committed "perjury" during the course of Plaintiff's criminal prosecution, because he told the trial court judge that he had only recently learned about the statement recorded by Garcia.  (Complaint, p. 15, ¶ 74.)  Drakeford allegedly "suborned" Redding's alleged perjury, because she purportedly should have known about it.  (Id.)[4]  Redding and Drakeford also allegedly deprived Plaintiff of his constitutional rights by failing to promptly inform Plaintiff about Garcia's allegedly illegal recording of Plaintiff's statement.

Defendant Gregory Mulligan is identified as a private attorney who represented Plaintiff during his state court criminal case.  Plaintiff alleges that Mulligan violated his constitutional rights by not making a sufficiently persuasive argument to suppress the

---

[4]  Plaintiff's complaint does not explain why he believes Redding supposedly committed perjury, (i.e., lied under oath), or why he believes Drakeford supposedly suborned that alleged perjury.

statement recorded by Garcia.   While acknowledging that Mulligan did object to the recorded statement, Plaintiff claims that Mulligan nevertheless violated the federal Constitution because he "failed to present any supporting case law or statutes for the suppression of [Plaintiff's] statements."  (Complaint, p. 17, ¶ 82.)

Defendant Marilyn Justman Kaman is the state district court judge who presided over Plaintiff's criminal trial.  As far as the Court can tell, Defendant Kaman is being sued because (a) she allegedly conspired with Redding and Drakeford (and others) to prevent Plaintiff from knowing about the recording of the statement that Plaintiff gave to Garcia; (b) she failed to suppress the statement that Plaintiff gave to Garcia, and allowed the statement to be introduced as evidence; (c) she allegedly did not properly instruct the jury about the statement that Plaintiff made to the police; and (d) she did not correct her alleged errors during the course of Plaintiff's trial and post-conviction proceedings.

Seven of the twenty Defendants in this case – Defendants Gordon W. Shumaker, Edward Toussaint, Jr., Gary L. Crippen, Alan C. Page, Roger M. Klaphaka, David Minge, and Wright – are state appellate court judges; and five of the twenty Defendants – Raymond L. Erickson, James Rosenbaum, Steven Colloton, Raymond W. Gruender, and Bobby Shepard – are federal court judges.  All of these judicial Defendants allegedly violated Plaintiff's rights under federal law and the Constitution, by "neglecting and failing to address the violations [of Plaintiff's legal and constitutional rights] in their opinions."  (Id., p. 11, ¶ 56.)

Plaintiff is also attempting to sue a court reporter, Defendant Cheryl A. Seeman, who allegedly mis-transcribed a polling of the jurors at the conclusion of Plaintiff's criminal trial.  According to Plaintiff, only five jurors expressly affirmed that the verdict was true and

correct, but the transcript of the polling proceeding erroneously indicates that all twelve jurors "got up and said guilty." (Id., p. 21, ¶ 103.)  Plaintiff claims that the court reporter, Defendant Seeman, deprived him "of his civil rights by colluding with the primary defendants to secure an invalid conviction." (Id., p. 22, ¶ 103.)  Evidently, Plaintiff believes that the jury did not reach a unanimous guilty verdict, but Defendant Seeman somehow manipulated the record so that it would erroneously appear that he was properly found guilty, and thus Seeman is responsible for his "invalid conviction." (Plaintiff alleges no facts to support this dubious theory.)

Finally, Plaintiff is attempting to sue the United States and the State of Minnesota. Plaintiff apparently believes that both of those Defendants should be held vicariously liable for the alleged violations of his rights under federal law and the Constitution, simply because they were the employers of the various judicial Defendants in this case. (Id., p. 21, ¶ 102.)

## II. DISCUSSION

Because this action was brought by a prisoner who is seeking redress from government employees and entities, Plaintiff's complaint is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A.  That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in all civil actions brought by prisoners against governmental agencies and employees "before docketing, if feasible or, in any event, as soon as practicable after docketing."  28 U.S.C. § 1915A(a).  The court must determine which aspects of the pleading are actionable and should be allowed to proceed.  To the extent that the pleading fails to state a cause of action, or attempts to state a claim that is barred by immunity, the action must be

summarily dismissed.  28 U.S.C. § 1915A(b).[5]  Here, the Court finds that Plaintiff's claims against all twenty of the named Defendants are fatally defective, (for different reasons), and his complaint cannot survive preliminary screening.

A.  Judicial Defendants

The Court initially finds that thirteen of the twenty named Defendants are state or federal judges who are immune from suit under the doctrine of judicial immunity.  It is well-settled that judges are completely immune from civil lawsuits that are based on allegedly wrongful acts or omissions that occurred while performing their judicial functions.  Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Stump v. Sparkman, 435 U.S. 349, 355-57 (1978); Mireles v. Waco, 502 U.S. 9, 11 (1991); Liles v. Reagan, 804 F.2d 493, 495 (8th Cir. 1986). There are only two sets of circumstances in which the doctrine of judicial immunity can be overcome – (1) if the judge is being sued for actions that were not taken in the judge's judicial capacity, and (2) if the judge is being sued for actions taken "in the complete absence of jurisdiction."  Mireles, 502 U.S. at 11-12.

In this case, it is readily apparent that all of the thirteen judicial Defendants are being sued for acts or omissions that occurred while they were acting as judges – i.e., while they were serving in their respective judicial capacities.  Furthermore, there are no allegations suggesting that any of the judicial defendants acted "in the complete absence of

---

[5]  Although Plaintiff is no longer in prison, he was a prisoner when he commenced this action.  Furthermore, even if Plaintiff's complaint were not subject to screening under § 1915A, it still would be subject to screening pursuant to 28 U.S.C. § 1915(e)(2).  That statute authorizes federal courts to conduct a sua sponte review of every pleading filed by any party, (prisoner or non-prisoner), who seeks IFP status.  Because Plaintiff has applied for IFP status in this case, his complaint is subject to screening under § 1915(e)(2), at any time, regardless of his prisoner status.

jurisdiction." To the contrary, it is abundantly clear that all of the judges had jurisdiction in the matters giving rise to Plaintiff's claims against them.

Plaintiff obviously believes that the thirteen judicial Defendants misapplied the law, deprived him of his legal rights, and committed other grievous errors. However, all of those Defendants' alleged misdeeds occurred while they were serving as judges in matters that were properly before them. Therefore, Plaintiff's current lawsuit against all thirteen judicial Defendants – Marilyn Justman Kaman, Gordon W. Shumaker, Edward Toussaint, Jr., Gary L. Crippen, Alan C. Page, Roger M. Klaphaka, David Minge, Wright, Raymond L. Erickson, James Rosenbaum, Steven Colloton, Raymond W. Gruender, and Bobby Shepard – must be summarily dismissed based on judicial immunity.

B. Prosecutorial Defendants

Two of the named Defendants, Stephen Redding and Rachelle Drakeford, are state prosecutors who are being sued for alleged acts or omissions while they were prosecuting state criminal charges against Plaintiff. However, prosecutors are immune from such claims under the doctrine of prosecutorial immunity. Imbler v. Pachtman, 424 U.S. 409, 427-428 (1976); Patterson v. Von Riesen, 999 F.2d 1235, 1237 (8th Cir. 1993); Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992) (per curiam), cert. denied, 506 U.S. 1053 (1993). Prosecutorial immunity specifically applies to all acts or omissions by a prosecutor "in initiating a prosecution and in presenting the State's case." Imbler, 424 U.S. at 431. "Immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir.), cert. denied, 519 U.S. 867 (1996).

Defendants Redding and Drakeford are absolutely immune from Plaintiff's current claims against them, because he is attempting to sue them for acts they allegedly performed while prosecuting the State's criminal charges against him.  Plaintiff contends that Redding and Drakeford breached their respective duties, <u>as prosecutors</u>, to disclose relevant evidence that was (allegedly) obtained by illegal means.  Plaintiff further contends that Redding and Drakeford used that evidence to convict him, and they engaged in other improper prosecutorial tactics during the course of his state court trial.  (<u>See</u> Complaint, p. 19, ¶ 23.)  However, "[i]f the prosecutor is acting as advocate for the state in a criminal prosecution, then the prosecutor is entitled to absolute immunity."  <u>Brodnicki</u>, 75 F.3d at 1266.

Plaintiff's complaint does not describe any specific act or omission by either Redding or Drakeford that did <u>not</u> occur while they were performing their duties as prosecutors for the State of Minnesota.  Therefore, all of Plaintiff's claims against those two Defendants are barred by the doctrine of prosecutorial immunity.

C.  <u>Defendant Mulligan</u>

Plaintiff alleges that Defendant Gregory Mulligan made several mistakes while serving as Plaintiff's defense counsel during his state criminal case.  Giving the complaint the benefit of liberal construction, it appears that Plaintiff is attempting to sue Mulligan under 42 U.S.C. § 1983, for allegedly depriving Plaintiff of his constitutional rights to due process and effective assistance of counsel.  (<u>See</u> Complaint, p. 17, ¶ 84, p. 19, ¶ 92.)

However, Plaintiff cannot bring a § 1983 action against Mulligan for alleged deprivations of his federal constitutional rights, because Mulligan was not acting under color of state law at the time of the alleged deprivations.   Indeed, Plaintiff's complaint plainly

states that Mulligan is a "private attorney." (Complaint, p. 7, ¶ 33.) Because Mulligan was a private citizen, not a state employee, he cannot be sued for violating Plaintiff's constitutional rights while serving as his attorney. See Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8ᵗʰ Cir. 2001) ("[o]nly state actors can be held liable under Section 1983"), cert. denied, 535 U.S. 1017 (2002).

The Eighth Circuit Court of Appeals has held that "[t]he conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of section 1983 violations." Holbird v. Armstrong-Wright, 949 F.2d 1019, 1020 (8ᵗʰ Cir. 1991). Therefore, Defendant Mulligan cannot be sued for allegedly depriving Plaintiff of his federal constitutional rights.[6]

### D. Defendant Garcia

Plaintiff is attempting to sue Defendant Garcia for violating his federal constitutional

---

[6] The Court also notes that Plaintiff's claims against Defendant Mulligan appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In that case, the Supreme Court held that a civil rights claimant cannot directly or implicitly challenge the validity of a criminal conviction in a civil lawsuit. Even when a claimant demands only money damages, he cannot bring a civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." Id., at 483. Therefore, when a plaintiff is seeking damages in a civil rights action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. In this case, Plaintiff obviously believes that he was wrongly convicted in his state criminal case because of Defendant Mulligan's alleged errors, (as well as the alleged misdeeds of others). It is inconceivable that Plaintiff could successfully prosecute his current civil rights claims against Mulligan, without effectively casting doubt on the validity of his conviction. (Indeed, casting doubt on Plaintiff's criminal conviction appears to be the fundamental objective of this entire action.) Therefore, Plaintiff's claims against Defendant Mulligan, (and perhaps all of his claims in this case), appear to be barred by Heck.

rights by taking a statement from him, (and recording it), without first advising him of his "Miranda rights."  Plaintiff also seeks to hold Garcia civilly liable for violating the federal statutes that restrict the Interception of Wire and Electronic Communications and Oral Communications – 28 U.S.C. §§ 2510 et seq.  However, Plaintiff cannot successfully sue Garcia on either of those proposed causes of action.

### (i) Constitutional claims against Garcia

Plaintiff cannot sue Garcia for violating his federal constitutional rights, because the Minnesota state courts have already ruled that Garcia was not acting under color of state law when he recorded his interview with Plaintiff.  In Plaintiff's direct appeal, the Minnesota Court of Appeals plainly ruled that –

> "The dictates of the Fourth and Fifth Amendments only apply to state actors. United States v. Garlock, 19 F.3d 441, 442 (8th Cir.1994).  Appellant's statements and evidence were obtained pursuant to a citizen's arrest by an employee of Augsburg College without the knowledge or acquiescence of the state.  Under these circumstances, the Fourth and Fifth Amendments do not apply."

Jones, 2005 WL 1088525 at *2.

This ruling by the state court precludes Plaintiff's current civil rights claims against Garcia.  The state court has already determined that Garcia did not violate Plaintiff's constitutional rights when he heard and recorded Plaintiff's statement, (because he was not a state actor at the time), and that ruling is binding here.  See Allen v. McCurry, 449 U.S. 90, 103-04 (1980) (collateral estoppel bars a civil rights claimant from relitigating issues that were previously resolved against him in a related state criminal case).

Furthermore, even if Garcia had been acting under color of state law when he obtained Plaintiff's statement, Plaintiff still could not maintain a civil rights action against

Garcia for failing to apprise him of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The Eighth Circuit Court of Appeals has repeatedly held that "a litigant cannot maintain an action under § 1983 based on a violation of the <u>Miranda</u> safeguards." <u>Hannon v. Sanner</u>, 441 F.3d 635, 636 (8th Cir. 2006). <u>See</u> <u>also</u> <u>Brock v. Logan County Sheriff's Dep't</u>, 3 F.3d 1215, 1217 (8th Cir.1993) (<u>per</u> <u>curiam</u>) ("[t]he remedy for [an] alleged <u>Miranda</u> violation is the exclusion from evidence of any compelled self-incrimination, not a civil rights action"); <u>Warren v. City of Lincoln, Neb.</u>, 864 F.2d 1436, 1442 (8th Cir.) (<u>en</u> <u>banc</u>), <u>cert denied</u>, 490 U.S. 1091 (1989) (same). Therefore, even if Garcia were a state actor, he could not be sued in a civil rights action for failing to give a <u>Miranda</u> warning to Plaintiff.[7]

Moreover, Plaintiff is, in any event, time-barred from bringing a civil rights action against Garcia. The applicable statute of limitations for such claims (brought in Minnesota) is six years. <u>Egerdahl v. Hibbing Community College</u>, 72 F.3d 615, 618, n. 3 (8th Cir. 1995). In this case, Plaintiff was aware that Garcia had recorded his statement sometime before February 11, 2004, (the date when Plaintiff was sentenced in his criminal case), but he did not file his present lawsuit until more than seven years thereafter. Thus, even if Plaintiff had pleaded an actionable civil rights claim against Garcia, (which he clearly has not done), that claim would be time-barred.

---

[7] Aside from the attempted <u>Miranda</u> claim, Plaintiff seems to believe that Garcia violated the federal Constitution simply because he recorded Plaintiff's statement while purportedly acting as a law enforcement official. That notion is clearly unsustainable. <u>See United States v. Sileven</u>, 985 F.2d 962, 966 (8th Cir. 1993) ("[i]t is well settled that a law enforcement agent may record conversations between himself and another party without violating the Fourth Amendment"), (citing <u>United States v. White</u>, 401 U.S. 745, 752 (1971); <u>Lopez v. United States</u>, 373 U.S. 427, 439 (1963)).

**(ii) 18 U.S.C. §§ 2510 et seq.**

Plaintiff is also attempting to sue Garcia (and others) under 18 U.S.C. §§ 2510 et seq.[8]  Those statutes restrict the "interception," "use" or "disclosure" of various forms of electronic or oral communications.  18 U.S.C. § 2511(1).  18 U.S.C. § 2520 creates a private cause of action against individuals who violate those restrictions.  While the statutes do impose some restrictions on the recording of conversations, they generally do <u>not</u> restrict the recording of a conversation by a person who is a party to the conversation.  28 U.S.C. § 2511(2)(c) and (d).  Because Garcia was a party to his recorded conversation with Plaintiff, Garcia did not violate federal law by recording the conversation.  <u>See</u> <u>In re Grand Jury Subpoena (T-112)</u>, 597 F.3d 189, 204 (4th Cir. 2010) ("The Act identifies a number of exceptions to its general prohibition. For example, it authorizes the interception of a communication when the interceptor is a party to the communication.") (citing § 2511(2)(c) and (d)), <u>cert</u>. <u>denied</u>, 131 S.Ct. 1470 (2011).  <u>See also</u> <u>Morgan v. United States</u>, 60 Fed.Appx. 180, 182 (9th Cir. 2003) ("[p]ursuant to section 2511(2)(c) & (d), [an alleged law enforcement official] could lawfully intercept the oral communication because he was a party to the communication he recorded") (unpublished opinion).

Furthermore, even if the allegations in Plaintiff's complaint could support a cause of action under 18 U.S.C. § 2520, the claim would be time-barred.  The statute includes an

---

[8]  18 U.S.C. §§ 2510–2522 is the "federal wiretap statute formally known as Title III of the Omnibus Crime Control and Safe Streets Act of 1968." <u>United States v. Gaines</u>, 639 F.3d 423, 426, n. 2 (8th Cir. 2011). <u>See also</u> <u>United States v. Fairchild</u>, 189 F.3d 769, 774 (8th Cir. 1999) ("Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, generally prohibits the government from conducting wiretap investigations without first obtaining an approval order from a judicial officer"). Plaintiff has frequently referred to these statutes as the "Omnibus" law or "Title III."

explicit two-year statute of limitations, to wit: "A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 28 U.S.C. § 2520(e). As discussed above, Plaintiff was aware that Garcia had recorded his statement before February 11, 2004, so any § 2520 claim against Garcia based on that recording had to be initiated before February 11, 2006, at the latest. Plaintiff missed that statute of limitations deadline by more than five years.

E.  Defendant Seeman

Plaintiff's claims against Defendant Cheryl Seeman, the court reporter who allegedly prepared an inaccurate trial transcript, are clearly barred by Heck v. Humphrey, 512 U.S. 477 (1994). As the Court has previously pointed out, (see n. 6, supra), Heck prohibits a plaintiff from pursuing a civil rights claim that would, if proven, cast doubt on a prior criminal conviction. In this case, Plaintiff has explicitly declared that he is attempting to sue Defendant Seeman "for deprivation of his civil rights and colluding with the primary defendants to secure an invalid conviction." (Complaint, p. 22, ¶ 103, [emphasis added].) Plaintiff obviously could not prove that Seeman helped "to secure an invalid conviction," without casting doubt on the validity of his conviction. Therefore, Plaintiff's claims against Seeman are clearly barred by Heck.[9]

---

[9]  In any event, Plaintiff's claims against Seeman are bordering on specious. According to the complaint, Plaintiff has been aware that he was (supposedly) convicted by a less-than-unanimous jury since the conclusion of his trial. Yet, as far as the Court can tell, he has never questioned the unanimity of the jury's verdict in any of his numerous prior challenges to his conviction. Now he claims that the court reporter is somehow responsible for his allegedly "invalid conviction." This claim is grossly lacking in both logic and credibility.

F.  United States and State of Minnesota

Finally, the Court finds that the United States and the State of Minnesota are immune from Plaintiff's current claims for relief.[10]  The doctrine of sovereign immunity bars private civil actions against the United States, unless the party bringing the action can show that the United States has expressly waived its immunity for the particular type of claim that is being raised.  United States v. Mitchell, 463 U.S. 206, 212 (1983) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"); Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991) ("[i]t is undisputed that the United States, as a sovereign, cannot be sued without its consent"); Chernin v. United States, 149 F.3d 805, 813 (8th Cir. 1998) (same). Furthermore, a waiver of the federal government's sovereign immunity can be effected only by an express and unequivocal Act of Congress, and "[c]ourts are not free to extend... waivers of sovereign immunity beyond what Congress intended."  Manypenny, 948 F.2d at 1063.

In this case, Plaintiff has not identified any specific federal law that waives the federal government's sovereign immunity from his present lawsuit.  Therefore, Plaintiff's claims against the United States must be summarily dismissed based on sovereign immunity.

--------

[10]  It is doubtful that Plaintiff has stated an actionable claim against either the United States or the State of Minnesota, because Plaintiff seems to be contending that those two Defendants should be held vicariously liable for civil rights violations allegedly committed by their respective employees.  (See Complaint, p. 21, ¶ 102.)  However, the doctrine of respondeat superior is not applicable in civil rights case, (Monell v. Department of Social Services, 436 U.S. 658, 694 (1978)), so neither the federal government nor the State can be held vicariously liable in such cases.

The Eleventh Amendment provides that states and their agencies are immune from suit in federal court, unless the state has consented to be sued, or Congress has abrogated the state's immunity by some <u>express</u> statutory provision.  <u>Pugh v. Alabama</u>, 438 U.S. 781, 782 (1978) (<u>per</u> <u>curiam</u>); <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66-67 (1989); <u>Egerdahl v. Hibbing Community College</u>, 72 F.3d 615, 619 (8th Cir. 1995); <u>Glick v. Henderson</u>, 855 F.2d 536, 540 (8th Cir. 1988).  Plaintiff has not identified any applicable Congressional abrogation of the State's Eleventh Amendment immunity, and there are no factual allegations showing that the State of Minnesota has waived its immunity and consented to be sued in this case.  Thus, the Court finds that the State of Minnesota is constitutionally immune from Plaintiff's present lawsuit.

## III. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff's complaint must be dismissed, in its entirety, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).  Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350.00 filing fee for this case.[11]   To date, Plaintiff has paid only $10.00, so he still owes $340.00.  Prison officials will have to deduct that amount from his prison trust

---

[11]   Under the Prison Litigation Reform Act of 1995, ("PLRA"), prisoners may be excused from <u>pre</u>-paying the full amount of the applicable filing fee before filing an action.  However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee."   In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee.  <u>Ashley v. Dilworth</u>, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time").  Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee.  <u>See</u> <u>In re Tyler</u>, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).[3]  The Court will also recommend that the dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

Finally, the Court notes that Plaintiff has filed several collateral motions in this case, which are pending at this time.  First, Plaintiff filed a "Motion for Recussal [sic] of Judge(s)," (Docket No. 4), with his original complaint.  In that motion, Plaintiff anticipated that this case might be assigned to a judge that he is presently attempting to sue, and he suggested that if that were to occur, then that judge-defendant should recuse himself or herself from this case.  The motion also requests that if this case is assigned to a judge who cannot hear the case impartially, a recusal order should be entered.  However, this case was <u>not</u> assigned to a judge who is presently being sued, and the Court finds no reason to believe that this case cannot be heard fairly and impartially by the judges to whom it has been assigned.  Therefore, Plaintiff's recusal motion should be denied.

Plaintiff has also filed a motion entitled "Motion for Heck Bar Exception."  (Docket No. 12.)  In that motion, Plaintiff contends that this action should not be dismissed pursuant to the Supreme Court's decision in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  However, the Court has already determined that some of Plaintiff's claims, (namely his claims against Defendant Cheryl A. Seeman), are barred by <u>Heck</u>, for reasons explained above.  Therefore, Plaintiff's "Motion for Heck Bar Exception" should be denied.

---

[3]  The Court realizes, of course, that Plaintiff is no longer in prison, and thus, as a practical matter, the fee payment provisions of § 1915(b)(2) cannot be implemented at this time.  However, if Plaintiff ever returns to prison, by violating the terms of supervised release or committing some new crime, § 1915(b)(2) might then become applicable.

Next, Plaintiff filed a motion seeking to correct the spelling of a Defendant's name. ("Motion to Fix Clerical Mistake," [Docket No. 13].)  However, the Court has recommended that Plaintiff's claims against that Defendant should be dismissed.  Therefore, Plaintiff's motion to clarify the name of that Defendant should be denied as moot.

Lastly, Plaintiff has filed a "Motion to Withhold Consent to Magistrate Judge Jurisdiction Pursuant to 28 U.S.C. § 636(c)(2) and Fed. R. Civ. P. 73."  (Docket No. 14.) However, this case has <u>not</u> been assigned to a magistrate judge for trial pursuant to § 636(c) and Rule 73, and neither party has given the requisite consent to such an assignment.  While Plaintiff's withholding of such consent is acknowledged, his pending motion to withhold consent is superfluous, and should be denied as moot.

## V.  RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.  Plaintiff's applications for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, (Docket No. 3 and 8), be **DENIED**;

2.  Plaintiff's "Motion for Recussal [sic] of Judge(s)," (Docket No. 4), be DENIED;

3.  Plaintiff's "Motion for Heck Bar Exception," (Docket No. 12), be DENIED;

4.  Plaintiff's "Motion to Fix Clerical Mistake," (Docket No. 13), be DENIED AS MOOT;

5. Plaintiff's "Motion to Withhold Consent to Magistrate Judge Jurisdiction Pursuant to 28 U.S.C. § 636(c)(2) and Fed. R. Civ. P. 73," (Docket No. 14), be DENIED AS MOOT;

6.  This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b), and 28 U.S.C. § 1915(e)(2)(B);

7.  Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the sum of $340.00, in accordance with 28 U.S.C. § 1915(b)(2); and

8. The dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

Dated:   June 24, 2011

__s/ Arthur J. Boylan_____
ARTHUR J. BOYLAN
Chief United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before July 8, 2011.